UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIARA WILLIAMS,                           Case No. 23-cv-12404

     Plaintiff,                          Hon. F. Kay Behm
v.                                        United States District Judge

AUTOKINITON, d/b/a TOWER                  Hon. Anthony P. Patti
INTERNATIONAL, INC.,                      U.S. Magistrate Judge

     Defendant.

_____ /

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 39)

## I.    PROCEDURAL HISTORY

This matter is before the court on Defendant's motion for

summary judgment.  ECF No. 39.  Plaintiff Tiara Williams brings

claims of sexual harassment, retaliation, and racial discrimination

against Defendant Tower Automotive Operations USA I, LLC d/b/a

Autokiniton.[1]  ECF No. 1.  A related case was brought in *Huston v.*

_____

[1] Defendant is incorrectly identified in the case caption as Autokiniton d/b/a
Tower International, Inc.

1

*Autokinito*n (Case No. 2:23-cv-13070), and the arguments on both cases were consolidated.[2]

Williams brings retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Title VII and ELCRA sexual harassment claims, and Title VII and ELCRA race discrimination claims.  ECF No. 1.  The motion is fully briefed, and the court heard argument on this and the related case on September 17, 2025, at which counsel for both parties were present.

For the reasons explained below, the court **GRANTS** the motion as to all claims addressed in Defendant's motion.  Whether Plaintiff pled separate and distinct claims for gender discrimination was not sufficiently addressed by any party, and so the court seeks supplemental briefing on that issue.

## II.   FACTUAL BACKGROUND

---

[2] Because they are related cases and share some overlapping facts, the parties sometimes present deposition testimony taken in the other case.  Neither party objects to the use of the depositions in that way, and the court generally accepts their admissibility for use in either case.

Autokiniton is an automotive stamping and assemblies supplier and builds automotive frames.  ECF No. 39, PageID.331.  Plaintiff began her employment with Autokiniton on or about November 30, 2018, as an hourly production operator at the Plymouth, Michigan facility and was a member of the United Auto Workers union.  *Id.*  For approximately two years, from March 2020 through April 2022, Plaintiff was laid off due to the COVID-19 pandemic, but was recalled to work in May 2022.  *Id.*

On October 28, 2022, Plaintiff complained to Diane Maccani, former Plymouth facility Human Resources Manager, that she was being sexually harassed by James Pace, former Plymouth Operations Manager.  *Id.* at PageID.333.  Plaintiff told Kimberly Gault, Human Resources Generalist, that a manager was watching her and Gault offered to escalate her concern to the Human Resources Manager (Maccani), which she claims she did.  *Id.*  Maccani was made aware of Williams' concerns prior to the October 28 meeting, and Maccani reached out to Plaintiff several times to speak to her about her complaint.  ECF No. 39-8, PageID.436-37.

At the October 28 meeting, Maccani took Plaintiff's statement. Mandy Varga, Area HR Manager and Maccani's supervisor, was present during Plaintiff's discussion with Maccani.  ECF No. 39, PageID.334. At that meeting, Plaintiff claimed that in 2022, Pace, among other things, would watch her at her work station, showed her pictures of his house and cars, asked if he could come over to her house, invited her to go ride horses, would rub up against her every time he came to her work station, and once followed her to the Speedway gas station during her break.  *Id.*  Pace later denied the sexual harassment allegations.

On November 3, 2022, prior to completing the investigation into Williams' allegations, Maccani's employment was terminated.  ECF No. 39, PageID.335.  Defendant identifies performance-related reasons, while Plaintiff claims that Maccani's termination was because she was investigating Plaintiff's complaint.  After Maccani's departure, Varga allegedly interviewed Pace and prepared a summary of his interview; she also prepared a summary of Williams' original interview.  *Id.*  After Pace's interview, the Company received correspondence from an attorney representing Plaintiff (not her current counsel of record) regarding Plaintiff's allegations of sexual harassment, at which time

4

the Company retained outside counsel, Jeff Kopp of Foley & Lardner LLP, to complete the investigation and respond to Plaintiff's attorney. ECF No. 39-13, PageID.470.  Ryan Hernandez, Director of HR Operations and Labor Relations, participated in the investigation with Kopp.  ECF No. 39-12, PageID.462.  During the investigation, the Company (Kopp) interviewed Plaintiff and approximately seventeen (17) hourly and salaried employees, including individuals identified by Plaintiff and/or her attorney as potential witnesses.  ECF No. 39-13, PageID.470-71.  The company determined the claims to be unsubstantiated and took no action in Plaintiff's favor.

Although not part of her October 28 complaint, in the course of the investigation Plaintiff later made other claims of sexual harassment by individuals other than James Pace, "including that in 2022, someone named Scott would stand behind her and stare at her from the back, someone named Ray asked her out and told her how good she looked, a supervisor named John Munday called her his baby mama and said stuff about her body, and hourly employee Torrae Rucker" made inappropriate sexual comments.  ECF No. 39, PageID.336.  In her Complaint, Plaintiff also claims that prior to her approximately two-

5

year layoff in May 2020, she was sexually harassed by supervisors named Derrick, Tony, and Ray, and by Torrae Rucker.  ECF No. 1, PageID.2-3.

The investigation into Williams' sexual harassment allegations took a turn when two employees came forward with unusual statements.  On October 31, 2022, Precious Knox allegedly approached Pace on the plant floor and told him that she got a call from Plaintiff Williams during Knox's day off.  Knox stated that Plaintiff told her that she would be getting a call to give a witness statement, that Knox should lie about Pace, and "that someone put a bug in her ear to sue the company for a payout."  ECF No. 39-16, PageID.479.  Pace sent an email to Maccani and Stephanie Cauley, Senior HR Generalist, on November 1, 2022, summarizing his alleged discussion with Knox. During the Company's subsequent interview with Knox and a second interview with another hourly employee, Tashodd Timms, both Knox and Timms stated that Plaintiff offered to pay them money to lie by claiming they witnessed Pace was sexually harassing Plaintiff.  Both Knox and Timms then signed sworn affidavits attesting to their discussions with Plaintiff.  For example, to Knox Plaintiff allegedly

said, "Girl, get in on this lawsuit," asked her to say Pace was sexually harassing her, although Knox says she never witnessed him doing so. ECF No. 39-17, PageID.481.  To Timms Plaintiff allegedly said, "I told these motherfuckers I ain't the one to fuck with.  I'm not playing.  We're going to bankrupt this bitch," and "[y]ou gotta say you witnessed James Pace making sexual advances towards me."  ECF No. 39-18, PageID.486.

Both Knox and Timms were served to appear for depositions by Plaintiff; neither appeared and they were never deposed.  *See* ECF No. 50.  Plaintiff argued to exclude their affidavits on that basis.  ECF No. 57, PageID.1700.

Autokiniton says that based on Knox's and Timms' statements and affidavits, which they deemed credible, the Company concluded that Plaintiff tried to bribe Knox and Timms to lie during the Company's investigation, in violation of the Code of Conduct.  ECF No. 39-12, PageID.456, 458, 462, 466 (fired for violation of Code of Conduct). Williams was fired effective January 5, 2023.  ECF No. 39-19, PageID.488.

Plaintiff claims her employment was terminated not because of the alleged bribery but because she engaged in protected activity in reporting sexual harassment and because of her race.

## III.   STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable

inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

## IV.   ANALYSIS

### A.   Admissibility of the Knox/Timms Affidavits

One preliminary issue: Plaintiff has disputed that the Knox and Timms affidavits are admissible at the summary judgment stage at all. *See* ECF No. 57, PageID.1700.  Two problems arise with this argument, and the court ultimately rejects it.

First, and most importantly, the court gave Plaintiff an opportunity to brief this issue directly, albeit in addition to what she had said elsewhere.  *See* ECF No. 55 (order for supplemental briefing). Plaintiff's counsel neither appeared in person as required at the hearing on that briefing (though was later permitted to appear remotely), nor filed any timely briefing at all, forfeiting her chance to address the issue.

Second, on the merits the court does not find that the affidavits are inadmissible at summary judgment.  Although hearsay evidence may not be considered on a motion for summary judgment, *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986).  That is why, for example, a plaintiff's deposition testimony offered by the plaintiff to prove the truth of the matter asserted, even without corroborating evidence, may be sufficient to create a genuine issue of material fact.  *Moran v. Al Basit, LLC*, 788 F.3d 201, 206 (6th Cir. 2015); *see* Fed. R. Evid. 801(d)(2) (at trial, only an opposing party's prior statement is not hearsay).  The idea is that when the witness provides testimony at trial, that testimony will be admissible even if their earlier deposition testimony is generally not.  *See Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).  So an affidavit used to support a motion for summary judgment, in order to be considered by the court, must simply be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4).

Ordinarily, the court would have no pause considering the affidavits here.  Both exhibits are based on personal knowledge, set out facts that would be admissible in evidence, and indicate the affiant is competent to testify at trial.  ECF No. 39-17, PageID.481 (Knox affidavit); ECF No. 39-18, PageID.485 (Timms affidavit).  So, assuming

(as the court ordinarily does) that both individuals are available to testify at trial, the affidavits can be considered.  The issue presented in this case was that neither affiant appeared for deposition when served, nor appeared before this court when subpoenaed, which in the court's view raised the question of whether the affidavits were rendered inadmissible hearsay by the affiants' failure to appear and the apparent unlikelihood of the affiants' appearance at trial.  *See* Fed. R. Evid. 804(b) (only certain categories of statements exempted from rule against hearsay for witnesses who are unavailable to testify at trial); ECF No. 55, PageID.1680 (ordering briefing on the issue of unavailable witnesses); *see Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, No. 09-14444, 2019 U.S. Dist. LEXIS 48573, at *14 (E.D. Mich. Mar. 25, 2019) (asking whether declarations would be admissible at summary judgment when declarant was unable to be deposed and unlikely to testify at trial, but ultimately finding that a proper objection was not timely raised and resolving the issue on that separate ground).

However, this court likewise can avoid that question because the affidavits are not hearsay.  As Defendant argued, they are not offered for purposes of this motion to prove the truth of the matter asserted (i.e.

that Williams in fact attempted to bribe two other employees to lie on her behalf during the sexual harassment investigation); they are offered to prove the effect on the listener (that Autokiniton had a good faith belief that Plaintiff was engaged in disallowed conduct, regardless of whether that was actually true). *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay."); *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."); *United States v. Churn*, 800 F.3d 768, 775 (6th Cir. 2015) (employer's emails offered to prove that employer became suspicious of employee's representations were not hearsay). The affidavits are therefore properly able to be considered in the court's analysis below.

## B.   Retaliation (Title VII and ELCRA) (Counts I and II)

To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Fenton v.*

*HiSan, Inc.*, 174 F.3d 827 (6th Cir. 1999). If a plaintiff proves a prima facie case, the defendant must put forth a legitimate, non-retaliatory reason for the action. If successful, the plaintiff must then prove that the defendant's reason was a pretext for retaliation. *Polk v. Yellow Freight System, Inc.*, 876 F.2d 527 (6th Cir. 1989). A plaintiff may show pretext in a number of ways, including by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

However, the Sixth Circuit has adopted what has been sometimes referred to as a modified "honest belief" rule. "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason," an employee cannot establish pretext simply because the reason is ultimately shown to be incorrect. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *Smith*, 155 F.3d at 806 ("[S]o long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."); *Blizzard v. Marion Tech. Coll.*, 698 F.3d

14

275, 286 (6th Cir. 2012) (deeming the approach a "modified honest belief rule").

"An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117 (citation omitted). But "[i]f there is sufficient evidence for a reasonable jury to find the employer did not have an honest belief in its proffered reason that was based on a proper investigation, summary judgment must be denied." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021). The burden is on the employer "to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Clay v. UPS*, 501 F.3d 695, 714 (6th Cir. 2007). An employee can still overcome the "honest belief rule" by pointing to evidence that "the employer failed to make a reasonably informed and considered decision before taking its adverse employment action." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 322 (6th Cir. 2019).

The court must first consider whether the honest belief rule is even necessary to decide in this case. A plaintiff can show pretext in

any of three ways explained above; the honest belief rule only rebuts one of them – the lack of a basis in fact for the proffered reason. *See Briggs* 11 F.4th at 515 ("the honest-belief rule gives a defendant the opportunity to rebut . . . that the defendant's proffered reason for the adverse action lacks a basis in fact"). The honest belief rule does not, however, rebut that the proffered reason was insufficient to motivate the decision of the proffered reason or that it did not actually motivate the decision, it only responds to a lack of a basis in fact. *See Joostberns v. UPS*, 166 F. App'x 783, 791 (6th Cir. 2006). And here, Williams says she alleges "all three" kinds of pretext are present, which would seem to render an analysis of the honest belief argument a pointless exercise. *See* ECF No. 57, PageID.1714. But Plaintiff's arguments, though framed as an attack on all three prongs (presumably to avoid the honest belief doctrine), only truly sound in the first method of proving pretext, so the doctrine is necessary to evaluate.

Consider how plaintiffs are generally intended to show each type of evidence. The second method, attacking the sufficiency of the employer's proffered reasoning for terminating the employee, "ordinarily consists of evidence that other employees were not fired

even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Joostberns*, 166 F. App'x at 791 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). But Williams has presented no evidence that other employees were not fired who engaged in similar alleged conduct. Her attack is thus not truly on the credibility of the explanation that dishonest behavior of this kind is a sufficient reason to justify an employee's termination.

The third method, demonstrating that the proffered reason did not actually motivate the employer, "admits that the reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer." *Joostberns*, 166 F. App'x at 791. But in order in "order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence[.]" *Manzer*, 29 F.3d at 1084. Here, though, Plaintiff does *not* actually admit that the proffered reason could have motivated the employer because her argument is that the affidavits were fraudulently obtained; i.e. that they were false and could not have motivated the employer. In a single sentence, Plaintiff

seems to indicate that she accepts the possibility the alleged bribery could have motivated Defendant: "Even if Defendant has articulated a legitimate reason for Plaintiff's termination namely, alleged bribery Plaintiff has presented compelling evidence that this reason is pretextual."  ECF No. 57, PageID.1714.  But her arguments that immediately follow are all points that respond to whether the conclusion that Williams was attempting to bribe coworkers had a basis in fact – not that the illegal reason was more likely than the suspicion of bribery to motivate their decision.  *See id.* (claiming the affidavits were false because they were produced under "suspect" circumstances, that their timing was "suspicious," and that the investigation was neither "impartial nor robust").  Properly construed, the arguments about the falsity of the affidavits address only the first method of attacking the proffered reason's basis in fact.  *See Joostberns*, 166 F. App'x at 794 (evidence under the *first* method tends to "demonstrat[e] that the proffered reason for his termination was false"); *Manzer*, 29 F.3d at 1084 ("The first type of showing . . . consists of evidence that the proffered bases for the plaintiff's discharge . . . are 'factually false.'").  Her argument regarding the inadequacy of the investigation is also just

an attack on the employer's decision having basis in fact.  *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (treating an attack on the adequacy of the decisional process as an argument that the employer's proffered reasons lacked basis in fact, but holding that "it is not necessary 'that the decisional process used by the employer be optimal or that it left no stone unturned.'").  Meanwhile, Williams does not come forward with any additional evidence to rebut these affidavits; her showing does not go beyond her "prima facie" evidence, as it must under the third method of proving pretext.  *See Manzer*, 29 F.3d at 1084.  While Williams elsewhere in her brief claims that she experienced increased retaliation and disciplinary measures in retaliation for making her complaint, including being denied overtime, she fails to point to any record evidence supporting her claims.  *See* ECF No. 57, PageID.1708.[3]

---

[3] The best the court could find was a citation to "Complaint ¶¶ 34–36; Ex. D, Williams Dep. at 199:23-200:10; Exhibit J; Exhibit K)."  ECF No. 57, PageID.1691. But her complaint is not verified, so it is not evidence and is inadmissible at summary judgment.  *See* ECF No. 1 (Complaint); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (allegations in an unverified complaint are not admissible evidence).  Her deposition testimony says that she was falsely written up for being late coming back from lunch.  ECF No. 51-1, PageID.1533.  Exhibit J appears to be a write-up of that incident.  *Id.* at PageID.1653.  Exhibit K includes several write-ups that indicate she left early or was tardy on various days.  *Id.* at PageID.1655.

So, properly reframed (and liberally construed), Williams' position is that she claims the proffered reason did not have a basis in fact because her employer was aware the affidavits they relied on were fraudulently obtained and the investigation of her complaints was shoddy, so a jury could choose not to credit the honesty of the conclusions they say they drew. *See* ECF No. 57, PageID.1714-15. Specifically, Williams says (1) "the affidavits on which Defendant relies are not only uncorroborated but were produced under suspect circumstances," (2) "the timing of the alleged bribery 'discovery' closely followed Plaintiff's protected activity filing a formal HR complaint and retaining a lawyer making it appear retaliatory," and (3) "Defendant's

---

But Exhibit J is dated October 7, 2022. The write-ups in Exhibit K are dated: September 13, 2022; October 6, 2022; October 19, 2022; October 28, 2022; November 4, 2022; November 10, 2022; and December 1, 2022. *Id.* at PageID.1655-61. And the evidence shows that Plaintiff's first sexual harassment complaint was on or about October 28, 2022; at least three of these write-ups for the same conduct, therefore, predated her complaint of sexual harassment. Exhibit J and the alleged late lunch predate her complaint by several weeks. Thus no reasonable jury could find that the timing of these disciplinary measures is evidence of retaliation.

Plaintiff also brings up an issue where, apparently, she was suspended after she left work early and failed to provide supporting written medical documentation. ECF No. 57, PageID.1708. Her record citation for that claim, such as it is, is to a recording she made in which no persons are identified. *See* ECF No. 51-1, PageID.1625. But there is no evidence that this was connected to her termination, nor is there any inference that this was related somehow to her sexual harassment complaint. And as far as she may be bringing up a new theory that she was terminated in retaliation for ADA-protected activity, that claim is found nowhere in her complaint and this single mention in her response to a motion for summary judgment is not a proper method of raising that claim.

investigation was neither impartial nor robust: it ignored key witnesses favorable to Plaintiff, failed to document any independent corroboration of the bribery claims, and did not address the extensive prior harassment." *Id.* None of those reasons, however, suffice to second-guess Autokiniton's decision or show that a jury could find that the employer did not have an honest belief in its proffered reason. And Plaintiff comes forward with no contravening evidence, rather than her own assertions, about the alleged inconsistencies in Defendant's investigation.

Plaintiff has no real evidence, for example, that the affidavits were produced under "suspect" circumstances. Kopp, who conducted the investigation for Autokiniton in December 2022, stated that he interviewed about 17 Autokiniton employees. Two of the interviewees he interviewed indicated that Williams "offered to pay them to lie and say that they witnessed Mr. Pace sexually harassing Ms. Williams, although they had not." ECF No. 39-13, PageID.471. The Knox and Timms affidavits are dated December 20, 2022, which is consistent with Kopp's timeline. ECF No. 39-17, PageID.481; ECF No. 39-18, PageID.485. There is no indication in the record that Defendant

somehow improperly or pretextually sought out these interviews; rather, they simply investigated Williams' sexual harassment claims and uncovered surprising new evidence during that process. Knox and Timms "volunteered" their information to the investigators; there is no evidence beyond Plaintiff's speculation suggesting any decisionmaker in Williams' termination sought out those statements improperly. *See* ECF No. 39-12, PageID.462. Defendant also did not have to "document independent corroboration of the bribery claims" or conduct a "polygraph, text recovery, or internal forensic review" to conduct a thorough investigation when it had two apparently independent witnesses who were each willing to sign sworn statements to two separate instances of alleged bribery. *See* ECF No. 57, PageID.1715; *id.* at PageID.1710; ECF No. 39-12, PageID.462 (statements were dissimilar in specifics); *Michael v. Caterpillar Fin. Srvs. Corp.*, 496 F.3d 584, 598-599 (6th Cir. 2007) ("We do not require that the decisional process used by the employer be optimal or that it left no stone unturned."). It is also not genuinely disputed that the conduct Knox and Timm described violated Autokiniton's Code of Conduct. ECF No. 39-12, PageID.456; ECF No. 39-6, PageID.413 (the company's "work

environment" must "uphold[] the Company's reputation for integrity, ethical conduct, and trust."); *id.* (employees must "treat all AUTOKINITON associates, customers and business partners in an ethical, honest, respectful and fair manner.  Violations of this Code will lead to disciplinary action for associates, up to and including termination of employment.").  Ryan Hernandez, Director of HR Operations and Labor Relations, testified that they did in fact rely on the affidavits and statements by Knox and Timms to terminate her. ECF No. 39-12, PageID.456.

The point here is that Williams has no actual evidence that Defendant did not in fact believe that the affidavits were accurate; she has not come forward with enough evidence a jury could find she was fired for retaliation rather than integrity issues.  *See Hamilton v. Boise Cascade Express*, 280 F. App'x 729, 733 (10th Cir. 2008) (where defendant alleged plaintiff was fired for time card fraud, but she alleged she was fired based on her race, finding that "the distinction between time-card fraud and time-card mistakes" did not create a material dispute of fact when plaintiff pointed to no evidence that she was fired for absenteeism rather than integrity issues).

The court was cautious in reaching this decision.  Its analysis must walk a careful line, because these conclusions are closely related to a very similar factual issue: whether Plaintiff's report of sexual harassment was made in good faith (i.e. that she believed she was sexually harassed), which would undoubtedly be an issue for a jury to decide.  *See Graf v. Morristown-Hamblen Hosp. Ass'n*, 155 F.4th 578, 590 (6th Cir. 2025) (plaintiff was entitled to prove to a jury that she had a "reasonable and good-faith belief" that the conduct she complained of violated Title VII).  If Plaintiff had been terminated solely because the company disbelieved her report of sexual harassment after their investigation, then Defendant conceded at argument – and the court agrees – that disbelief could not constitute, as a matter of law, an "honest belief" justifying termination.  *See, e.g.*, *Graf v. Morristown-Hamblen Hosp. Ass'n*, No. 22-cv-00070, Doc. 151 at PageID.3732 (E.D. Tenn. Apr. 12, 2024) (denying summary judgment where employer claimed it "honestly believed the encounter" between two employees "was consensual" and therefore violated a company policy about sex on company property).  Too broad a statement of the rule applied here would swallow the pretext inquiry entirely; a company who "honestly

believes" its employee is lying about the sexual harassment they report cannot have an automatically winning defense to a retaliation claim absent some independent reason to fire them, else Title VII's anti-retaliation provisions be rendered effectively toothless against the scurrilous and unprincipled employer.

Yet that principle also has limits; the Sixth Circuit has said that an honest belief that an employee is committing fraud *can* be a valid defense for an employer at summary judgment, even when the fact and kind of the alleged fraud substantially overlap with the character of the protected activity.  In *Seeger v. Cincinnati Bell Tel. Co.*, the plaintiff took FMLA leave and concurrent paid leave under his employer's disability plan to treat and recover from a herniated disc in his back. 681 F.3d 274 (6th Cir. 2012).  His employer, however, terminated him for disability fraud after Seeger's co-workers saw him at the Oktoberfest in downtown Cincinnati during his FMLA leave period.  The Sixth Circuit found that the honest belief rule shielded the employer from liability.  Even though Seeger presented evidence that he was legitimately in pain and needed FMLA leave, the court said "[t]he determinative question is not whether Seeger actually committed fraud,

but whether CBT reasonably and honestly believed that he did." *Id.* at 286.  It held that the employer conducted "a reasonably informed and considered decision before terminating Seeger," even though "Seeger or the court might have come to a different conclusion if they had conducted the investigation[.]" *Id.* at 287.  It did not matter in *Seeger* that the proffered reason (fraudulently seeking disability benefits) was closely related in kind to the protected activity (legitimately seeking disability benefits), and that the employer was essentially second-guessing the plaintiff's sincerity in their protected activity; the overlay of sufficient reason to suspect fraudulent activity and adequate investigation into that activity was sufficient to invoke the honest belief rule.  *See Kilpatrick v. HCA Hum. Res., LLC*, No. 22-5307, 2023 U.S. App. LEXIS 3625, at *9 (6th Cir. Feb. 13, 2023) ("Fraud and dishonesty constitute lawful, non-retaliatory bases for termination.") (citation omitted).  In this case, Autokiniton was similarly engaged in a reasonable investigation of Williams' claims, there is no indication that Autokiniton had any reason to doubt the veracity of Knox or Timms' statements at the time, and the decision to terminate Williams for that reason was "reasonably informed and considered" on the facts available

to them.  The relatively thorough investigation done into Williams'
claims, and lack of clear error in that investigation, distinguishes this
case from those in which the investigation had evident lack of
credibility.  *See, e.g.*, *Graf*, 22-cv-00070, Doc. 151, PageID.3731 (E.D.
Tenn.) (denying application of honest belief rule when hospital ignored
that "multiple other women . . . had accused [defendant] of
inappropriate behavior and unwanted sexual advances[,]" yet
"apparently made no effort to investigate these allegations").

Finally, contrary to Plaintiff's assertions, the mere temporal
proximity of the Knox/Timm affidavits to Plaintiff's protected activity
does not raise a genuine dispute as to Autokiniton's honest reliance on
the affidavits.  "Unlike its role in establishing a prima facie case, the
law in this circuit is clear that temporal proximity cannot be the sole
basis for finding pretext."  *Seeger*, 681 F.3d at 285 (cleaned up); *Kellar
v. Yunion, Inc.*, 157 F.4th 855, 882 (6th Cir. 2025).  Because Williams'
other arguments related to pretext do not prove her point, temporal
proximity is her only remaining evidence of pretext, and it alone is
insufficient.  The timing of Timms and Knox coming forward, as pointed
out above, is not suspicious because it aligns with the company's third-

party investigation of Williams' claims and interviewing of many witnesses.

Admittedly, the court is unimpressed by Knox and Timms' failure to appear for deposition or for a show cause hearing before this court, and continues to consider next steps to enforce this court's orders, including orders holding them in contempt. But for the purposes of the honest belief rule and this motion, the pretext determination does not hinge on whether a violation of the Code of Conduct in fact occurred as described (*i.e.*, whether Williams in fact attempted to bribe coworkers to lie for her or if it turns out both Knox and Timms lied) but on whether Autokiniton decisionmakers engaged in a proper investigation and as a result of that investigation honestly believed that Williams attempted to bribe coworkers to lie (*i.e.*, whether Autokiniton honestly believed in their nondiscriminatory or nonretaliatory reason for terminating Williams). *See Clay v. UPS*, 501 F.3d 695, 714 (6th Cir. 2007); *Beny v. Univ. of Mich.*, No. 24-1674, 2025 LX 360505, at *22-23 (6th Cir. July 29, 2025). Nothing in the record suggests that any relevant decisionmaker knew at the time that Knox or Timms' affidavits might be untrustworthy for some reason or that their statements were

contestable.[4]  A plaintiff is required to show "more than a dispute over the facts upon which the discharge was based," and Williams has not done so.  *See Seeger*, 681 F.3d at 285; *Hartman v. Dow Chem. Co.*, 657 F. App'x 448, 453 (6th Cir. 2016) (finding that a plaintiff must do more than "question[] a specific result" or specific methods "from the investigation" but instead specifically "show[] that the employer's decision-making process was not 'reasonably informed and considered' and is thus not worthy of belief").  No reasonable jury could conclude that the "employer's decision-making process" in this case was "unworthy of credence," or that it made an error "too obvious to be unintentional."  *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 288 (6th Cir. 2012) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-08 (6th Cir. 1998)).

Summary judgment must be granted as to Count I.  And because retaliation claims under Title VII and the ELCRA are reviewed under

---

[4] The court acknowledges that "[t]he three-part test need not be applied rigidly.  Rather, pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?"  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (citation omitted).  Even under that more flexible view, Plaintiff has not come forward with more than a mere scintilla of evidence from which a jury could find in her favor, which is not sufficient to defeat summary judgment.  *See Anderson*, 477 U.S. at 248, 251.

the same standard, summary judgment must likewise be granted as to

Count II as well.  *See Wasek v. Arrow Energy Servs.*, *Inc.*, 682 F.3d 463,

472 (6th Cir. 2012) (noting in case where plaintiff brought a retaliation

claim under both Title VII and the ELCRA that "the ELCRA analysis is

identical to the Title VII analysis"); *see also Bivens v. Zep, Inc.*, No. 23-

cv-11398, 2024 U.S. Dist. LEXIS 180016, at *6 (E.D. Mich. Nov. 22,

2024).

### C.   Gender Discrimination (Counts III and IV)

Making the court's job somewhat harder on this motion, and in

evaluating Plaintiff's claims, is that Counts III and IV are labelled

"Gender/Sexual Harassment/Discrimination," which seems to meld

together distinct causes of action – sexual harassment and gender

discrimination.  For example, as addressed in Part D, this certainly

raises sexual harassment claims, which are, granted, a species of sex or

gender discrimination claims.  But whether Plaintiff also raised distinct

"gender discrimination" claims was unclear based on the briefs.  When

asked at oral argument, Plaintiff's counsel alleged there was a distinct

gender discrimination claim, and because Defendant did not move for

summary judgment on that basis, Plaintiff did not have a burden to

defend it.  For its part, the court notes that Plaintiff has a duty to "separat[e] claims into separate counts . . . if more than one claim has been joined in a complaint and separation will facilitate clear presentation." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 n.2 (6th Cir. 2013) (citation omitted); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392-93 (6th Cir. 2020) (failure to separate each cause of action into separate counts can constitute impermissible "shotgun pleading" that violates Rule 10(b)) (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) (holding that a single count raising five causes of action constituted an impermissible "kitchen sink" pleading)).

Frankly, it is not at all clear what distinct gender discrimination claim is left on these facts that would be substantively distinct from Williams' sexual harassment claim.  But Plaintiff alleges there remains such a claim, the complaint as alleged at least facially contains that possibility, Defendant did not move for summary judgment as to such a claim, and the court is hesitant to dismiss the claim absent adversarial briefing even where the court is otherwise addressing all of Plaintiffs' claims.  So the court instead seeks clarity and/or briefing on the issue.

Plaintiff shall, within seven days of entry of this order, file a notice either 1) certifying that a distinct cause of action for gender discrimination was brought under the complaint, or 2) notifying the court and Defendant that no distinct cause of action was alleged. If Plaintiff's counsel certifies that a distinct cause of action was included, the court grants Defendant leave to file a second motion for summary judgment as to any remaining gender discrimination claim, within 30 days of entry of Plaintiff's notice. Defendant's brief, including a statement of facts (which need only address any facts, if any, related to gender discrimination), may not exceed 12 pages. Plaintiff's response brief shall also not exceed 12 pages and must otherwise comply with the court's Practice Guidelines, or will be stricken and, if the time to file has expired, Plaintiff will not have a further opportunity to file an amended response brief. Defendant's reply shall not exceed 7 pages. Neither party should address the sexual harassment claims already addressed here; the issue is solely whether there is a distinct cause of action for discrimination on the basis of gender in Williams' allegations. *See, e.g.*, *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019); *Baggett v. City of Cincinnati*, No. 22-3338, 2022 U.S. App. LEXIS

33139, at *4 (6th Cir. Nov. 30, 2022).  Plaintiff's counsel is hereby warned that should the issue arise again before the undersigned, the failure to separate causes of action into distinct counts may be considered forfeiture of undifferentiated claims at summary judgment. *See* Fed. R. Civ. P. 10(b).

### D.   Sexual Harassment (Counts III and IV)

As the other half of Counts III and IV, Williams brings federal and state claims for a hostile work environment, a species of sexual harassment claim.  *See Bivens v. Zep, Inc.*, 147 F.4th 635 (6th Cir. 2025) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).

### i.   Timeliness

As a preliminary note, Defendants have raised the issue of timeliness.  Under Title VII, a charge of discrimination must be filed with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e).  An action under the ELCRA must be commenced within three years.  Mich. Comp. Laws § 600.5805(2); *Major v Vil. of Newberry*, 316 Mich. App. 527, 534 (2016).

Plaintiff filed her EEOC Charge on November 29, 2022, which means she cannot base her Title VII claims on any conduct alleged to

33

have occurred outside the 300-day limitations period, or prior to
February 2, 2022.  Plaintiff filed her Complaint in this action on
September 20, 2023, which means she cannot base her ELCRA claims
on any conduct alleged to have occurred outside the three-year
limitations period, or prior to September 20, 2020.  Therefore, the only
period Plaintiff worked during the applicable limitations' periods was
approximately eight months, from May 2022 through December 2022
(prior to her January 5, 2023, termination).

   In a conclusory manner, Plaintiff asserts in response that her pre-
2022 claims are not time-barred because she is alleging a "continuing
violation," in which earlier events are actionable as part of a hostile
work environment claim. *See* ECF No. 57, PageID.1712 (citing *Nat'l
R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).[5]  It is true
that the continuing-violation doctrine applies in hostile-work-
environment cases, as "[t]heir very nature involves repeated conduct"
where the claim is "based on the cumulative effect of all such

---

[5] At oral argument, Plaintiff appeared to backtrack, saying that she is not
bringing any claims for events in 2018 (and presumably, 2019-2020).  That
statement is facially inconsistent with her briefing, so the court addresses the point
on the merits.

acts." *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613-14 (6th Cir. 2020) (citing *Morgan*, 536 U.S. at 115).

But Plaintiff is glossing over the fact that Plaintiff was laid off for over two years, from March 24, 2020, through April 2022, and did not return to work until May 2022.  ECF No. 39-4, PageID.378-79. Although neither party cites any authority on this issue, Defendant claims that "[t]his two-year gap in her employment is fatal to any continuing violation claim."  ECF No. 49, PageID.1090.

Whether a multi-year gap in employment would sever the continuity necessary for applying the doctrine does not appear to be clearly established.  In a hostile work environment, the "unlawful employment practice" does not occur on any particular day.  "It occurs over a series of days or perhaps years" and are based on the cumulative effect of each minor occurrence.  *Morgan*, 536 U.S. at 115.  However, analogous to this situation is a scenario where a plaintiff alleges a hostile work environment but there is a multi-year gap in the conduct they complain of (even if not necessarily a gap in the employment itself).  Implicit in the "continuing violations" exception to the general rule is that the hostile workplace is in some way "continuous."  *Matlock*

*v. Bd. of Trs. of the Univ. of Ill.*, No. 23-cv-15194, 2025 LX 60606, at *8

(N.D. Ill. May 9, 2025).  For that reason, courts across the circuits have

found that the continuing violation doctrine cannot be used to tie

together incidents hostile environment claims separated by large gaps

in time.  *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir.

2017) (declining to apply the continuing violation doctrine when there

was a gap of two or three years between episodes of harassment); *Little

v. NBC*, 210 F. Supp. 2d 330, 371 (S.D.N.Y. 2002) (isolated incidents

separated by time gaps of two to three years insufficient to establish

continuing violation); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759,

766 (2d Cir. 1998) (gaps of one or more years between alleged incidents

breaks the asserted continuum of discrimination and precludes a

finding of continuing violation).  The Sixth Circuit has articulated the

question as a two-part test: whether the incidents are both "similar" to

the prior ones and are "continuing" from those past incidents.  *El-Zabet

v. Nissan N. Am., Inc.*, 211 F. App'x 460, 465 (6th Cir. 2006) (citing

*Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 376 (6th Cir.

2002)).  So here, even assuming the pre-layoff incidents in this case are

"similar" to those that occurred upon her return to work in 2022, the

alleged harassment cannot be considered "continuing" over such a long gap in time and employment. *See El-Zabet*, 211 F. App'x at 464-65 (6th Cir. 2006) (eleven-month lapse too long to support continuing violations theory); *Weigel*, 302 F.3d at 376-77 (eight-month lapse too long to support continuing violations theory); *see also Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 755 (M.D. Tenn. 2010) (almost three years too long). If the workplace itself was not "continuous," then neither could be the alleged hostile work environment. Any incidents from prior to Williams' layoff are therefore time-barred under both Title VII and the ELCRA.

### ii.    Title VII

To establish a prima facie case of hostile environment sexual harassment under Title VII and the ELCRA, a plaintiff must show that: (1) she belonged to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive work environment; and (5) there is a basis for employer liability. *Grace v.*

*Uscar*, 521 F.3d 655, 678 (6th Cir. 2008); *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 (2021).

The court assumes without deciding that the conduct Williams complained of in 2022 was severe or pervasive, because Plaintiff fails to prove the final prong – that Defendant can be held liable for the conduct. Defendant argued in their motion that there is no basis to hold them liable for the challenged conduct. In Autokiniton's words:

> It is indisputable that (1) Autokiniton had appropriate anti-harassment and no-retaliation policies and procedures in place, which Plaintiff was admittedly aware of, and (2) following Plaintiff's October 28, 2022, complaint, Autokiniton conducted a prompt and thorough investigation. Although the investigation determined that Plaintiff's claims were unsubstantiated, Plaintiff cannot establish why Autokiniton should be held liable. The law does not require an employer to substantiate a sexual harassment complaint in order to be absolved of liability. Moreover, after Plaintiff's October 28 complaint, she never complained about any other alleged harassment by Pace or anyone else prior to her termination.

ECF No. 39, PageID.350-51.

Although neither party cites relevant case law, the standard for employer liability differs depending on whether the harassment was

carried out by a supervisor or coworker.  *Doe v. City of Detroit*, 3 F.4th

294, 301 (6th Cir. 2021).

> In the case of a harassing supervisor, the
> employer is vicariously liable for the hostile work
> environment.  But when committed by a
> coworker, the employer is liable only if it knew or
> should have known of the charged sexual
> harassment and failed to implement prompt and
> appropriate corrective action.  To find liability,
> the employer's response to a coworker's
> harassment must manifest indifference or
> unreasonableness in light of the facts the
> employer knew or should have known.  An
> employer's response is generally adequate if it is
> reasonably calculated to end the harassment.
> The appropriate corrective response will vary
> according to the severity and persistence of the
> alleged harassment.  Steps that would establish a
> base level of reasonably appropriate corrective
> action may include promptly initiating an
> investigation, speaking with the specific
> individuals identified in the complaint, following
> up with the complainant, and reporting the
> harassment to others in management.

> The most significant immediate measure an
> employer can take in response to a sexual
> harassment complaint is to launch a prompt
> investigation to determine whether the complaint
> is justified.  By doing so, the employer puts
> all employees on notice that it takes such
> allegations seriously and will not tolerate
> harassment in the workplace.

*Id.* (citations omitted, cleaned up); *see also Newton v. Ohio Dep't of Rehab. & Corr.-Toledo Corr. Inst.*, 496 F. App'x 558, 565 (6th Cir. 2012) (employer acted reasonably when it "immediately began an internal investigation, . . . scheduled meetings with Plaintiff's supervisors to discuss the incident in detail, interviewed witnesses, including [the harasser], and prepared a separate report of its findings"); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (employer acted reasonably when it "reacted immediately" to harassment complaint, "launched a two-week investigation, interviewed the parties involved, and instructed [the harasser] not to bother [the complainant]"); *Gwen v. Reg'l Transit Auth.*, 7 F. App'x 496, 502 (6th Cir. 2001) (employer "took prompt remedial action in response to [plaintiff's] complaint" by "immediately investigat[ing] the charges and suspend[ing] [the harasser]").

Plaintiff's sole response on the vicarious liability point is:

> Despite Plaintiff reporting these behaviors to HR, union reps, and management, no effective action was taken. In fact, the only HR officer who appeared to support her, Diane Maccani, was terminated immediately after helping Plaintiff submit a formal complaint. Defendant's failure to promptly investigate or discipline any of the accused employees satisfies the employer liability

> element of the hostile environment claim.  *See*
> *Chambers v. Trettco, Inc.*, 463 Mich. 297 (2000)
> (employer liable when it fails to take prompt
> remedial action).[6]

ECF No. 57, PageID.1712.

The facts of the investigation done in this case are set out by the

Defendant as follows:

- In October 2022, Plaintiff told Kimberly Gault in Human
  Resources that a manager was watching her; Gault offered
  to escalate her concern to the Human Resources Manager
  (Maccani), and did so.  ECF No. 39-7, PageID.428.[7]

- Whether or not Gault escalated the concern to Maccani, a
  meeting was set for October 28, 2022 for Williams to meet
  with Maccani.  Prior to their October 28 meeting, Maccani
  reached out to Plaintiff several times to speak to her, but
  Plaintiff was unavailable.  ECF No. 51-1, PageID.1389-90.[8]

- During their October 28 meeting, Maccani took Plaintiff's
  statement and had her prepare her own written statement.
  Mandy Varga, Area HR Manager and Maccani's supervisor,

---

[6] *Chambers* is a state law Michigan Civil Rights Act case, not a Title VII case.

[7] Plaintiff denies this and says Gault ignored her and never escalated it to
Maccani.  ECF No. 51-1, PageID.1501, 1547.  What Gault did or did not do is not
critical when the evidence shows that Williams undoubtedly spoke to Maccani on
October 28, 2022, and Maccani tried to speak with Williams before then.

[8] Plaintiff "denies" this, but provides no citation to record evidence genuinely
controverting Maccani's testimony.  ECF No. 57, PageID.1694.  Williams' testimony
indicates only that she went to Maccani's office to speak to her and wrote out a
statement; that is a factual description of the meeting that occurred, not a denial
that Maccani had reached out to try and set an earlier meeting.  *See* ECF No. 51-1,
PageID.1511.

was present during Plaintiff's discussion with Maccani. ECF No. 39, PageID.334; ECF No. 57, PageID.1694. Plaintiff's complaint to Maccani, as well as her written complaint, related solely to alleged harassment by Pace and did not claim harassment by anyone else. *Id.*

- On November 3, 2022, prior to completing the investigation of Williams' claim, Maccani's employment was terminated for performance-related reasons, having nothing to do with Plaintiff. ECF No. 39-12, PageID.461.[9]

- After Maccani's departure, Defendant alleges that Varga interviewed Pace and prepared a summary of his interview. and prepared a summary of Plaintiff's interview, which Plaintiff acknowledges is accurate. ECF No. 39-10, PageID.447-451; ECF No. 51-1, PageID.1514.[10]

- After the Company received correspondence from an attorney representing Williams regarding Plaintiff's allegations of sexual harassment, the Company retained

---

[9] Plaintiff says differently: she alleges it was because Maccani was investigating her claims. ECF No. 57, PageID.1695. But Plaintiff's subjective belief is not sufficient to create a genuine dispute of fact on this point when no supporting evidence exists. Notably, Plaintiff's statement that "people in the plant" told her it was for this reason is inadmissible hearsay. ECF No. 51-1, PageID.1532. And Maccani herself testified (in Plaintiff's own exhibits) that her termination had nothing to do with Williams' investigation. ECF No. 51-1, PageID.1387. So Plaintiff's belief that Maccani's termination is somehow connected to her allegations ultimately rests on her own speculation, which is insufficient to forestall summary judgment. *See Bradley v. Wal-Mart Stores, E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions."). Plaintiff's counsel's representations to the court on this matter strain the reaches of zealous representation.

[10] Plaintiff denies this document was authored by Varga, and it is unclear whether Plaintiff denies that Autokiniton interviewed Pace at that time. ECF No. 57, PageID.1695. Certainly, there is no dispute that both Maccani and Varga were present during Plaintiff's interview. Plaintiff does not cite to controverting evidence.

outside counsel, Jeff Kopp of Foley & Lardner LLP, to complete the investigation and respond to Plaintiff's attorney.  Ryan Hernandez, Director of HR Operations and Labor Relations, participated in the investigation with Kopp. ECF No. 39-13, PageID.470; ECF No. 39-12, PageID.462.[11]

• During the investigation, Defendant (through Kopp) interviewed Plaintiff and approximately seventeen (17) hourly and salaried employees, including individuals identified by Plaintiff and/or her attorney as potential witnesses.  ECF No. 39-13, PageID.470.[12]

• According to Defendant, "Not a single witness corroborated Plaintiff's sexual harassment claims. Plaintiff's sexual harassment allegations, therefore, were determined to be unsubstantiated."  ECF No. 39, PageID.337 (citing ECF No. 39-13, PageID.471, ECF No. 39-12, PageID.464-65).[13]

---

[11] Again, Plaintiff neither "admits nor denies" this and says she "doesn't know who" Hernandez is, but cites to no contravening evidence.  ECF No. 57, PageID.1696.

[12] Again, Plaintiff issues a blanket "denial" without engaging with the record evidence.  She says "[a]t no time has Defendant identified anyone whom Kopp interviewed other than in this affidavit."  ECF No. 57, PageID.1697.  But two things are immediately apparent from that statement.  One, it misrepresents the record. *See* ECF No. 39-12, PageID.457 (Hernandez testimony naming four people off the top of his head).  Two, it does not actually dispute the truth of the affidavit, and points to *no controverting evidence*.  Affidavits are admissible at summary judgment and Plaintiff provides no reason to think that it is inaccurate, or evidence indicating that Kopp did not in fact interview potential witnesses.  There is no genuine dispute that the investigation occurred and that potential witnesses were interviewed.

[13] Plaintiff "denies" this because she says other individuals, allegedly not interviewed, could have substantiated her complaints.  ECF No. 39-12, PageID.465. But that is not the same thing as saying that the potential witnesses who *were* interviewed did not substantiate her claims.

In sum, Defendant has established, through uncontroverted evidence, that they 1) promptly conducted an investigation, 2) including speaking with the individuals identified and interviewing potential witnesses, and 3) reported the alleged harassment to others in management, such as Hernandez.  This suffices to show a prompt investigation to determine whether the complaint was justified.  *See Doe*, 3 F.4th at 301.  Plaintiff's allegations that "no effective action was taken" or that Defendant failed to promptly investigate her claims are conclusory, unsupported by record evidence, or affirmatively rebutted by the record.  Her indications that there may have been individuals who might have substantiated her claims is also not enough.  *See Kurtts v. Chiropractic Strategies Grp., Inc.*, 481 F. App'x 462, 466 (11th Cir. 2012) (an employer need not "interview every witness deemed critical by the complainant" so long as it makes clear it will "investigate the allegations and arrive at a reasonably fair estimate of the truth") (cleaned up).[14]  Contrary to Williams' conclusory argument, the "failure to discipline any of the accused employees" is also not a sufficient basis

---

[14] Notably, Kopp's affidavit alleges that Kenya Huston was not interviewed because neither Williams nor her attorneys identified her as a potential witness. ECF No. 39-13, PageID.471.

44

to find employer liability.  *See Barna v. City of Cleveland*, Nos. 96-3971, 96-4178 & 97-4130, 1998 U.S. App. LEXIS 31986, at \*13 (6th Cir. Dec. 22, 1998) ("though an employer's response must be swift and certain, disciplinary action is not required in every case, particularly when an employer undertakes an adequate investigation but fails to substantiate an employee's allegations"); *Fox v. Yates Servs., LLC*, No. 17-5226, 2017 U.S. App. LEXIS 21883, at \*8 (6th Cir. Oct. 31, 2017) (plaintiff "failed to create a genuine dispute of material fact as to whether [defendant] responded appropriately to her complaints" even though HR "did not find any evidence corroborating" her allegations).  On these facts, even in the light most favorable to Plaintiff, no reasonable jury could find that Autokiniton failed to implement prompt and appropriate corrective action by conducting a thorough investigation into Plaintiff's claims. Plaintiff provides no record citations or argument from which the court or a jury could conclude otherwise.  Therefore, liability may not be imputed to Autokiniton.[15]  Summary judgment is granted as to Count III.

---

[15] Pace (and possibly other individuals identified) appear to be some sort of supervisor.  *See* ECF No. 57, PageID.1689 ("Operations Manager"); ECF No. 57,

### iii.   ELCRA

The standards under Michigan's Elliott-Larsen Act are similar to

Title VII, "except that an employer may be held liable for the creation of

a hostile work environment only if it 'failed to take prompt and

adequate remedial action after having been reasonably put on notice of

the harassment.'" *Mathews v. Massage Green LLC*, No. 14-cv-13040,

2016 U.S. Dist. LEXIS 41799 (E.D. Mich. Mar. 30, 2016) at *6 n.4

(*quoting Chambers v. Trettco, Inc.*, 463 Mich. 297, 614 N.W.2d 910, 915-

16 (2000)).  That standard applies for hostile environment created by

either co-workers or supervisors.  *Id.*  So "[w]hile federal caselaw

extends the same standard to cases involving supervisor harassment in

quid-pro-quo and hostile-work-environment cases, *Chambers* held that

---

PageID.1711 (Plaintiff's "supervisors" identified only by first name).  That would
seem to raise the issue of whether Pace (or other identified individuals) directly
supervised Plaintiff and whether their conduct is independently sufficient to show a
hostile work environment and impute liability to Defendant.  *See Clark v. United
Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005) (employer is automatically
liable for a hostile work environment created by supervisor, though potentially still
has a *Faragher/Ellerth* defense if no tangible employment action was taken).
However, Plaintiff does not allege, let alone develop, that basis for employer
liability, so that point was forfeited, because it was Plaintiff's burden to raise the
point in response to the summary judgment motion.  *See United States v. Clark*, 24
F.4th 565, 577 (6th Cir. 2022) (a party forfeits an argument by failing to raise or
develop the argument before the district court); *Jolivette v. Husted*, 694 F.3d 760,
770 (6th Cir. 2012); *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442,
449 (6th Cir. 2008) ("It is not the district court's [] duty to . . . develop a party's
claims").

with respect to a hostile-work-environment claim, even if a supervisor—
an agent of the employer—is the harasser, an employee must avail
themselves of the company's internal complaint process to move
forward with a discrimination claim." *Jones v. FCA US LLC*, 15
N.W.3d 617, 619 n.2 (Mich. 2025) (Cavanagh, J., concurring).  In all
other respects, the ELCRA's standard "is identical to Title VII's
analysis." *Doe v. City of Detroit*, 3 F.4th 294, 304 (6th Cir. 2021)
(quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir.
2012)).  Therefore, because the investigation was adequate under Title
VII, it was also adequate under the ELCRA, and summary judgment is
warranted as to Count IV for sexual harassment.

### E.    Race Discrimination (Counts V and VI)

Williams also brings two claims of race discrimination (one under
Title VII, one under the ELCRA).  Both can be dealt with fairly quickly,
albeit for slightly different reasons.

### i.    Title VII

Before a plaintiff can bring a claim in federal court under Title
VII, she must first file a charge of discrimination with the EEOC.  42
U.S.C. § 2000e-5(e); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.

1992).  A judicial complaint must be limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Ang v. The Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).[16]

Defendants argue that Plaintiff's EEOC Charge does not allege race discrimination, check the "race" box, or allege any facts that could be reasonably construed as alleging race discrimination, and therefore that she failed to exhaust her administrative remedies.  ECF No. 39, PageID.352.  In response, Plaintiff says only, "Although Plaintiff's federal race discrimination claim under Title VII may be procedurally

---

[16] Defendant asserts that "[c]laims that are not within the scope of the EEOC investigation must be dismissed for lack of subject matter jurisdiction."  *Ulmer v. Dana Corp.*, 200 F. Supp. 2d 804, 813 (N.D. Ohio 2002), *aff'd*, 2004 U.S. App. LEXIS 21311 (6th Cir. October 12, 2004).  But the Sixth Circuit overruled that reasoning (and the related line of cases) in *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387 (6th Cir. 2008).  *See id.* at 401 ("We now hold, in light of *Arbaugh*, that although administrative exhaustion is still a statutory prerequisite to maintaining claims brought under the ADEA, the prerequisite does not state a limitation on federal courts' subject matter jurisdiction over such claims.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)); *see also Adamov v. United States Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013) (formally extending *Allen*'s rule to Title VII cases) ("the question of administrative exhaustion is nonjurisdictional").  Instead, the scope of an EEOC charge is just one component of administrative exhaustion, which "is more like a mandatory claim-processing rule, subject to waiver or forfeiture if not properly raised."  *Kilpatrick v. HCA Human Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020) (citing *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13, 17 (2017)).  Because dismissal of Williams' Title VII race discrimination claim is therefore non-jurisdictional in nature, the court maintains discretion whether to exercise supplemental jurisdiction over her state law race discrimination claim.

barred due to failure to include it in her EEOC charge, her state law claim under Michigan's ELCRA remains viable."  ECF No. 57, PageID.1713.  This statement functionally concedes the point, and the court grants summary judgment to Defendant on the Title VII race discrimination claim (Count V) on that basis.

### ii.   ELCRA

The law is well-settled that "[c]laims of race discrimination brought under the ELCRA are analyzed under the same standards as claims of race discrimination brought under Title VII."  *Dotson v. Norfolk S. R.R. Co.*, 52 F. App'x 655, 657 (6th  Cir. 2002) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)).  A plaintiff can prove discrimination through direct or circumstantial evidence.  *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).  When a plaintiff uses circumstantial evidence, a court must apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

To establish a *prima facie* case of race discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she suffered

an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by someone outside the protected class or treated differently from similarly situated, nonprotected employees. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014). To show that she was treated differently than similarly situated employees for the same or similar conduct, a plaintiff must show that "all relevant aspects" of her employment are "nearly identical" to those of the allegedly similarly situated employees. *Id*. If a plaintiff establishes a *prima facie* case, a presumption of discrimination arises. The burden of production then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 464 (2001). At the pretext stage, a court cannot second-guess an employer's business judgment; the only requirement is that the decision was not motivated by unlawful discrimination. *Hazle*, at 475-476.

Defendant argues three points. First, Plaintiff was not replaced by anyone. Second, there is no evidence that she was treated differently than any allegedly similarly-situated non-African-American employees.

Indeed, there are no other employees who engaged in the same conduct that led to Plaintiff' termination. Third, even if Plaintiff could establish a *prima facie* case, her race discrimination claims still fail because, as stated above, she cannot establish that Autokiniton's proffered reason for terminating her employment was a pretext for unlawful discrimination. ECF No. 39, PageID.353-54.

Plaintiff does not respond to the first point, and so effectively abandons or concedes that point. She responds to the second point by arguing that she satisfies the prima facie requirements: she is a member of a protected class, suffered an adverse employment action, was qualified for her position, and has alleged that similarly situated non-Black employees were treated differently. Regarding evidence of similarly situated individuals, however, she says only that "[w]hile Defendant contends there are no comparators who were not terminated for bribery, that assertion ignores the credibility issues with the underlying accusations and overlooks the broader discriminatory pattern Plaintiff described." ECF No. 57, PageID.1713. She also argues that "[t]he Sixth Circuit has held that strict comparator evidence is not required when there is sufficient circumstantial evidence of racial bias."

*Id.* at PageID.1713-14 (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999)).  She then points to what is, in her view, evidence that Black employees in general faced harsher discipline than non-Black employees, and without citation, states that she testified that Black employees who complained to HR were routinely dismissed as liars, whereas white employees were treated more favorably.  *Id.*

Plaintiff's response does nothing to rebut Defendant's arguments about her failure to make out a prima facie case.  Her citation to *Jackson*, for example, is inapposite.  That was a hostile work environment case, not a burden shifting disparate treatment case.  *See Jackson*, 191 F.3d at 657.  Its treatment of evidence of relevant conduct in a hostile work environment does not absolve Plaintiff of her burden to come forward with comparator evidence for her disparate treatment claim.  Plaintiff largely accepts the burden-shifting framework (*see* ECF No. 57, PageID.1713), and in her response, despite acknowledging the requirement of coming forward with evidence of similarly situated individuals who were treated differently, she points the court to no evidence in her own deposition to support her allegations.  "It is not the district court's [] duty to search through the record to develop a party's

claims; the litigant must direct the court to evidence in support of its arguments before the court." *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008); *Drews v. Am. Airlines, Inc.*, 68 F. Supp. 3d 734, 739 (E.D. Mich. 2014) ("[T]he trial court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'") (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). The only evidence that Plaintiff directs the court to in her brief is a recording she made of, allegedly, another employee speaking about the treatment of Black employees at Autokiniton. ECF No. 57, PageID.1714 (claiming Employee "AA" (Plaintiff does not identify him) stated that Black male employees faced "swift and harsh discipline for harassment complaints, while white employees" did not). But this person's statements, whoever they are, are not alleged to be made under penalty of perjury, and cannot be considered on this motion. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment."). In form and content, they are inadmissible hearsay.

More to the point, however, Plaintiff does not meaningfully respond in any way to Defendant's third and final argument that, even assuming she has made out a prima facie case, her race discrimination claims still fail because she cannot establish that Autokiniton's proffered reason for terminating her employment was a pretext for unlawful discrimination on the basis of race.  Her failure to respond constitutes abandonment of the argument.  *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Anglers of the Au Sable v. United States Forest Svc.*, 565 F. Supp. 2d. 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").  And even taking Plaintiff's version of events in the light most favorable to her, there is no evidence connecting her termination with discrimination on the basis of race, nor does her argument point the court to any admissible evidence at all of

discriminatory acts against her on that basis.[17]  Without more, the mere

fact that Plaintiff is African-American and that she was terminated

does not suffice to create an inference of causal connection between the

two.  Summary judgment is therefore appropriate as to Count VI.

### F.    Mischaracterizations of the record

Finally, the court feels it appropriate to note the conduct of

Plaintiff's counsel in this case.  In briefs on motions for summary

judgment, this court requires attorneys to include a numbered

statement of material facts, and a response brief to include a similarly

numbered "Counterstatement of Material Facts" stating which facts are

admitted and which are contested.  But contesting a statement of fact

must be accompanied by some genuine basis for disputing the fact.  *See*

Practice Guidelines ("the non-moving party must explain the basis for

the factual disagreement, referencing and citing record evidence.").

They are not an opportunity for a party to deny statements of fact

without a good faith basis for doing so.  *See* Fed. R. Civ. P. 11 (an

attorney must certify that "the denials of factual contentions are

---

[17] Her pretext argument, such as it is (ECF No. 57, PageID.1714) makes no mention of *racial* discrimination, as opposed to retaliation based on reporting of sexual harassment.

warranted on the evidence or, . . . are reasonably based on belief or a lack of information."). When denying statements of fact, Plaintiff sometimes cited to irrelevant or inadmissible evidence, presumably in order to avoid "admitting" the relevant point offered by Defendant. *See, e.g.*, ECF No. 57, PageID.1694 (¶ 9); ECF No. 57, PageID.1695 (¶ 18); ECF No. 57, PageID.1696 (¶ 21-22); ECF No. 57, PageID.1697 (¶ 25); ECF No. 57, PageID.1704 (¶ 49). Some of these points have been detailed in the above opinion, in footnotes or otherwise. When she did so, she caused the court to needlessly expend its limited time attempting to follow the thread of her various denials to discover that the cited material was not relevant or that the point was not genuinely contested at all. Not only did Plaintiff's counsel fail to follow this court's Practice Guidelines by not including a proper counterstatement of facts at all in her initial response brief, but when given an opportunity to resubmit and do so properly, she improperly denied statements with mischaracterizations of the record or without material support. Plaintiff's counsel is warned that future conduct of this nature may incur sanctions under Rule 11. *See Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 769 (6th Cir. 2025) (warning Aikens that sending

the court on a wild "goose chase" for nonexistent record evidence is in fact a "serious and active misstatement[] of the record."). Counsel should heed this notice in responding to the court's instruction regarding Plaintiff's alleged distinct gender discrimination claims. *See* Section IV.C.

## V.   CONCLUSION

Therefore, the court **GRANTS** the motion for summary judgment as to Counts I, II, V, and VI. As to Counts III and IV, the motion is likewise **GRANTED** as to Plaintiff's sexual harassment claims. It is further **ORDERED** that Plaintiff shall have seven days to file a notice either 1) certifying that distinct causes of action for gender discrimination were brought under Counts III and/or IV, in which case Defendant may file a second motion for summary judgment as indicated in Section IV.C, or 2) notifying the court and Defendant that no distinct cause of action for gender discrimination was alleged, and in that case the court will promptly enter judgment in favor of Defendant, consistent with this opinion. The court will continue to retain jurisdiction to enforce any orders related to the nonappearance of Knox and Timms.

**SO ORDERED**.

Date: January 14, 2026                    <u>s/F. Kay Behm</u>
                                          F. Kay Behm
                                          United States District Judge